IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY FLETCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 12-489-SLR | |
| | ) | |
| PERRY PHELPS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 1ˢᵗ day of August, 2012, having screened the case pursuant to

28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that: (1) plaintiff's request for counsel (D.I. 5) is denied without

prejudice to renew; (2) plaintiff's motion for discovery (D.I. 8) is denied as premature;

(3) plaintiff may proceed against Gladys Little on the failure to protect claim; and (4) the

remaining claims are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)

and § 1915A(b)(1), for the reasons that follow:

1. **Background.** Plaintiff Timothy Fletcher ("plaintiff"), an inmate at the James

T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, who proceeds pro se and

has been granted in forma pauperis status, filed this complaint pursuant to 42 U.S.C.

§ 1983.[1] (D.I. 3) An amended complaint was filed on May 8, 2012.[2] (D.I. 9) Plaintiff

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]The amended complaint dismisses all claims against defendant Lt. Bayard. (D.I. 9)

alleges a failure to protect him from harm, violations of his right to due process, and retaliation.

2. **Standard of review**. This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. The legal standard for dismissing a complaint for failure to state a claim

pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used

when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d

Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a

claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for

failure to state a claim upon which relief may be granted pursuant to the screening

provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to

amend his complaint unless amendment would be inequitable or futile. *See Grayson v.*

*Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

5. A well-pleaded complaint must contain more than mere labels and

conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to

"[t]hreadbare recitals of the elements of a cause of action supported by mere

conclusory statements." *Id.* at 1949. When determining whether dismissal is

appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are

separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true,

but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must

determine whether the facts alleged in the complaint are sufficient to show that plaintiff

has a "plausible claim for relief."[3] *Id.* at 211. In other words, the complaint must do

---

[3]A claim is facially plausible when its factual content allows the court to draw a
reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556
U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for
more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a

more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

6. **Discussion**. Plaintiff attempts to allege violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. On January 7, 2012, plaintiff complained to defendant Sgt. Gladys Little ("Little") that his cellmate, Wilkerson ("Wilkerson"), a known sex offender, was touching him and sexually harassing him. Little told plaintiff that, as a gay man, he should expect the harassment, to "man up," and stop coming to jail. Little returned plaintiff to his cell with Wilkerson. The next day plaintiff again begged Little to transfer him to another cell. Little ignored plaintiff's pleas and threatened to send him to isolation for complaining to her. In the wee hours of the next morning, Wilkerson attempted to rape plaintiff, choked and slammed plaintiff's head against the door, and proceeded to remove plaintiff's clothing. Plaintiff fought off Wilkerson by biting and scratching him.

7. Plaintiff received a disciplinary report on January 9, 2012 and was sent to isolation in the Security Housing Unit ("SHU") disciplinary segregation unit. On January 10, 2012 defendant Lt. Brian K. Reynolds ("Reynolds"), the disciplinary hearing officer, advised plaintiff that he had conducted an investigation and read plaintiff's statement. Plaintiff was found guilty of assault, disorderly or threatening behavior, and fighting, and

---

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

4

sanctioned to thirty days in isolation. Wilkerson was released from isolation on January 11, 2012. Plaintiff requested an appeal and submitted a grievance. When he received no response, plaintiff wrote to defendant Captain RIspoli ("Rispoli") on January 28, 2012, but Rispoli did not respond until he spoke to plaintiff on April 3, 2012 regarding his complaints. After serving the thirty day sanction, plaintiff was reclassified to Level I and told that he would remain in SHU for another year.

8. Plaintiff alleges that defendants Warden Perry Phelps ("Phelps"), Rispoli Little, and Reynolds enforce a policy that places SHU inmates (as classified by Phelps), without prescreening them prior to cell placement, in violation of an inmate's right to be free from harm. He alleges that Phelps, Rispoli, and Reynolds engaged to cover up their behavior through discipline and by placing plaintiff in isolation for thirty days. Plaintiff seeks expungement of the disciplinary report from his institutional file, a return to Level III status, and transfer to a different correctional institution, as well as compensatory and punitive damages.

9. **Personal involvement/respondeat superior.** Plaintiff alleges in a conclusory manner that Phelps' policy of transferring inmates to more restrictive housing units, without regard to safety, violated his constitutional rights. A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised

5

upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

10. "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

11. Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's

rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

12. The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g., Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); *Bayer v. Monroe Cnty. Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.) Hence, it appears that, under a supervisory theory of liability and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for

the violation of a plaintiff's constitutional right.[4] *Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

13. Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks,* 885 F.2d at 1117-118; *see also Iqbal,* 556 U.S. at 677-686; *City of Canton v. Harris,* 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240 (3d Cir. 2005) (not published).

14. Here plaintiff alleges in a conclusory manner that Phelps created a policy to transfer inmates without regard to their safety. Notably, plaintiff's allegations do not indicate that Phelps was aware of plaintiff's concern for his safety that he expressed to Little. Nor do the allegations indicate that Phelps violated plaintiff's constitutional rights, that he expressly directed the deprivation of plaintiff's constitutional rights, or that he created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Indeed, the

---

[4]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks,* 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

allegations indicate that Little used her discretion in dismissing plaintiff's complaints and by not moving him to another cell. Even when reading the complaint in the most favorable light to plaintiff, it fails to state an actionable constitutional claim against Phelps.

15. **Due Process**. Plaintiff claims a violation of his due process rights because Reynolds allegedly failed to investigate the Wilkerson incident. In *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), the Supreme Court held that prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than twenty-four hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir. 1992). It is axiomatic, however, that to be entitled to procedural due process protections as set forth in *Wolff*, a prisoner must be deprived of a liberty interest. *See Wolff*, 418 U.S. at 557-558.

16. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court

of law." *Id.* Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Sandin,* 515 U.S. at 480 (quoting *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)).

17. In deciding whether a protected liberty interest exists under *Sandin,* a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. *See Young v. Beard,* 227 F. App'x 138 (3d Cir. 2007). Even if Reynolds failed to conduct an investigation and plaintiff was not allowed to appeal, plaintiff fails to state a constitutional claim on the facts as alleged. *See Henderson v.Kerns-Barr,* 2008 WL 2156357, at *1 (M.D. Pa. May 21, 2008) (assuming that the plaintiff was not afforded the protections called for by *Wolff,* because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights). According to the allegations in the complaint, plaintiff lacks the requisite liberty interest to implicate a due process violation. As plaintiff has not articulated a protected liberty interest with respect to his

discipline, confinement, and loss of privileges, his due process claims are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

18. **Retaliation**. Plaintiff alleges Phelps, Rispoli, and Reynolds engaged in retaliation through discipline in isolation as a means to cover up his altercation with Wilkerson.[5] "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Proof of a retaliation claim requires plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)).

19. The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce

---

[5]A prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).

a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

20. The complaint fails to meet the first element of a retaliation claim (i.e., that plaintiff was exercising his constitutional rights). Instead, the allegations are that plaintiff was disciplined for violating several disciplinary rules. Notably, the allegations indicate that Phelps and Rispoli were not made aware of the altercation and plaintiff's subsequent discipline until after both had occurred. With regard to Reynolds, the allegations indicate that he was performing his duties as a hearing officer. It is plaintiff's conclusory allegation of retaliation, and nothing more, that speak to retaliation. Therefore, the retaliation is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1).

21. **Transfer.** For relief, plaintiff seeks a transfer to a different correctional institution. The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an

inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. *Olim v. Wakinekona*, 461 U.S. 238, 251(1983). Plaintiff's request for injunctive relief in the form of a transfer and classification change seeks relief on issues outside the purview of the court. "[M]aintaining institutional security and preserving internal order and discipline" are the central goals of prison administration. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). The court has no authority to dictate plaintiff's housing assignment or prison classification. These determinations are made by prison authorities as part of the administration of the prison. Therefore, the claims are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

22. **Request for counsel**. Plaintiff's request for counsel is denied without prejudice to renew. (D.I. 5) Plaintiff seeks counsel on the grounds that he cannot afford counsel, his imprisonment greatly limits his ability to litigate, the issues are complex and require significant research and investigation, he has limited access to the library and limited knowledge of the law, the case will likely involve conflicting testimony and counsel will better enable him to present evidence and cross-examine witnesses, and expert testimony may be needed.

23. A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[6] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However,

---

[6]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.".

representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

24. After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree
> to which factual investigation will be necessary and the ability
> of the plaintiff to pursue investigation; (4) the plaintiff's capacity
> to retain counsel on his own behalf; (5) the extent to which a
> case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

25. This case is in its early stages, and service has not yet taken place. At present, plaintiff's filings indicate that he possesses the ability to adequately pursue his claims. Upon consideration of the record, the court is not persuaded that representation by an attorney is warranted at this time. The court can address the issue at a later date should counsel become necessary.

26. **Discovery.** Plaintiff's motion for discovery is denied as premature. (D.I. 8) Service has not taken place. In addition, the court may enter a scheduling order at a later date.

27. **Conclusion.** For the above reasons, the court denies without prejudice to renew plaintiff's request for counsel (D.I. 5) and denies as premature plaintiff's motion for discovery (D.I. 8). The court concludes that plaintiff has alleged what appears to be a cognizable and non-frivolous failure to protect claim against Gladys Little and he will

14

be allowed to proceed against her. All remaining claims are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), plaintiff shall provide to the clerk of the court **original** "U.S. Marshal-285" forms for **remaining defendant Gladys Little as well as for the Attorney General of the State of Delaware**, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to 10 Del. C. § 3103(c). **Plaintiff shall provide the court with copies of the complaint (D.I. 3) for service upon the remaining defendant and the Attorney General of the State of Delaware. Plaintiff has provided the court with service copies of the amended complaint (D.I. 9) for service upon the remaining defendant and the attorney general. Plaintiff is notified that the United States Marshals Service ("USMS") will not serve the complaint and amended complaint until all "U.S. Marshal 285" forms and copies of the complaint have been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" forms and copies of the complaint for the remaining defendant and the attorney general within 120 days of this order may result in the complaint being dismissed or defendant being dismissed pursuant to Fed. R. Civ. P. 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing

15

fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** *** When an amended complaint is filed prior to service, the court will **VACATE** all previous Service Orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). ***

8. **Note:** *** Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. ***

_____
UNITED STATES DISTRICT JUDGE