IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY FLETCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-489-SLR |
| | ) |
| GLADYS LITTLE, | ) |
| | ) |
| Defendant. | ) |

Timothy Fletcher, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Katisha D. Fortune, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: November 20, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Timothy Fletcher ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 3, 9, 24) He proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the court are plaintiff's request for counsel (D.I. 103), motions to compel (D.I. 104, 105), motion for an emergency ruling on pending motions (D.I. 107), motion for partial summary judgment (D.I. 118), and motion for preliminary injunction (D.I. 127), and defendant's motion for summary judgment (D.I. 121). The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will deny plaintiff's motions and will grant defendant's motion for summary judgment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his complaint on April 17, 2012, and amended it on May 10, 2102 and December 3, 2012. (D.I. 3, 9, 24) Defendant Gladys Little ("defendant") is the sole remaining defendant, all other claims and defendants having been dismissed. (*See* D.I. 9, 10) Plaintiff alleges that defendant failed to protect him from an attempted rape by a known sexual offender and that she discriminated against him based upon his sexual orientation. (D.I. 24) Plaintiff further alleges that defendant's actions resulted in a disciplinary write-up, a loss of Level III status, thirty days in isolation, a year in the security housing unit ("SHU"), removal from a drug treatment program, and an increase in classification points. He seeks expungement of the disciplinary report, as well as compensatory and punitive damages.

Plaintiff was housed in a single-cell in SHU, Building 29. (D.I. 24 at 5) The latter part of December 2011, he was moved to a double cell in Building 21. *Id.* Plaintiff was housed there a short time before he was moved to a different cell due to his complaints that his Muslim cellmate harassed and threatened him because he is a homosexual. (D.I. 123 at A75) The first week of January 2012, plaintiff told defendant that his new cellmate, also a Muslim, was harassing him because of his homosexuality and that he feared for his life. (*Id.*) Defendant told plaintiff that she had no authority to move him and that he should make the request to move to a lieutenant. (*Id.* at A76) Defendant suggested to plaintiff that he avoid taunting other inmates and to avoid hanging out in the recreation yard's "blind spots" where staff could not see him. (*Id.*) Defendant discussed plaintiff's complaints with her supervisor, Lieutenant Barry Burman ("Burman"), and asked if plaintiff could be moved. (Id.) She was told that a move was not possible at that time. (*Id.*)

On January 2, 2012, plaintiff was moved to a different cell following his request for mental health services. (*Id.* at A29) A protective custody investigation form indicates that plaintiff had been double-celled with inmate Brandon Wallace ("Wallace") and had made complaints that Wallace harassed and threatened him because he is gay. (*Id.*) Wallace expressed his displeasure with having a gay cellmate. (*Id.* at A29) Plaintiff and Wallace were separated and questioned. (*Id.* at A30) During the interview, plaintiff indicated that he was afraid of Wallace and requested protective custody. (*Id.*) Plaintiff was subsequently moved to protective custody and celled with inmate Kevin Wilkerson ("Wilkerson"). (*Id.* at 30-31)

2

Defendant was off from work when plaintiff was moved. When she returned to work on January 7, 2012, she discovered that plaintiff had been moved to protective custody and was celled with Wilkerson. (*Id.* at A76) Defendant worked a double shift that day from 4:00 p.m. on January 7, 2012 until 8 a.m. on January 8, 2012. (*Id.* at A75) Around 10:00 p.m., plaintiff complained to defendant that he did not like Wilkerson and wanted to be moved. (*Id.* at A76) Plaintiff did not tell defendant that Wilkerson was harassing him for sex, but stated that Wilkerson was making fun of him for being a homosexual. (*Id.*)

On January 7, 2012 at 11:00 p.m., plaintiff told Sergeant John H. Goldman ("Goldman") and Correctional Officer David Alston ("Alston") that he was having a problem with Wilkerson. (*Id.* at A31) Plaintiff was cuffed and removed from the cell and taken to the interview room. (*Id.*) Alston and Goldman informed defendant of the complaint and told her that plaintiff and Wilkerson were "bickering." (*Id.* at A76) Both inmates were spoken to separately and were advised that they needed to get along. (*Id.* at A31) Both inmates agreed that they would and they were returned to their cells. (*Id.* at A31, A76)

At 1:30 a.m. on January 8, 2012, defendant and Correctional Officer Keith Burns ("Burns") were conducting an area check, and plaintiff told defendant that Wilkerson was harassing him for sex. (*Id.* at A6) Wilkerson told defendant that plaintiff was doing the harassing. (*Id.*) Defendant told the inmates that if they continued to be disorderly, she would move them to isolation. (*Id.*) The inmates indicated they would stop. (*Id.*)

3

Defendant did not report the incident to the area supervisor.[1] (*Id.* at A70) During an investigation by internal affairs, defendant stated that she felt plaintiff was using her to go to SHU to be housed by himself. (*Id.*) She also indicated that she had not had complaints about Wilkerson in the past. (*Id.*) She did not report the matter because she did not see any reason to. (*Id.* at A70-A71) Defendant and Burns conducted a check thirty minutes later and both inmates were asleep in their assigned beds. (*Id.* at A34)

At approximately 3:21 a.m., Correctional Officer Jeffrey Holcomb ("Holcomb") noticed that Wilkerson had cut and scratch marks on his face. (*Id.* at A6, A37) Wilkerson indicated that he injured himself when he fell off his top bunk. (*Id.* at A37) Wilkerson was removed from the cell and examined by a prison nurse. (*Id.*) Wilkerson had scratches on his face, chest and upper left eye. (*Id.*) Plaintiff underwent a pre-segregation health assessment on January 8, 2012 at 5:30 a.m. (*Id.* at A47) Upon examination there were no contusions or bruises, and the physical examination was basically normal. (*Id.*) His emotional state was described as anxious. (*Id.*) Plaintiff was cleared for segregation. (*Id.*)

Wilkerson eventually admitted that he and plaintiff had been fighting. (D.I. 123 at A77) Plaintiff indicated to internal affairs that no sexual contact took place. (*Id.* at A11) Both inmates were placed in isolation for pre-hearing detention, both were issued a

---

[1]Defendant received written discipline from Deputy Warden David Pierce ("Pierce") because she did not notify the area lieutenant verbally or in writing of the action she took with respect to the conflict. Pierce concluded "that the alleged fight between Wilkerson and Fletcher was not directly attributable to [defendant] because even if she had contacted a supervisor when the inmates first complaint of harassment, that supervisor may have determined that inmate relocation was not required." (*Id.* at A74)

4

notice of disciplinary hearing due to fighting, and both inmates were found guilty of assault, threatening or disorderly behavior and fighting. (*Id.* at A11, A40) During plaintiff's hearing, he indicated that he and Wilkerson were fighting, but he did not hit him in the face. (*Id.* at A40) Both inmates were sanctioned and each sentenced to thirty days in isolation. (*Id.* at A41) In addition, plaintiff received seven points for fighting and was classified to SHU Level IV status. (*Id.* at A21) Plaintiff did not appeal the sanction. (*Id.* at A40) The disciplinary report does not indicate that Wilkerson attempted to rape plaintiff (*Id.* at A40) but, according to plaintiff, he informed Lieutenant Brian Reynolds ("Reynolds"), the hearing officer on duty, that he was not guilty of fighting "because he was defending himself against a possible rape." (D.I. 24 at 7) Subsequent to the disciplinary hearing, plaintiff filed grievances and letters indicating that Wilkerson attempted to rape him. (D.I. 123 at A43-A45) Plaintiff states in one of his grievances that he told defendant of his issues with defendant. but she did nothing and turned her back on him after she stated that plaintiff was gay, the guys here have not been with a female and plaintiff should suck it up and stop coming to jail. (*Id.* at A57) The same allegation was included in the amended complaint. (D.I. 24, ¶ 3) Defendant denies the allegations. (D.I. 27, ¶ 3)

III. MISCELLANEOUS MOTIONS

  A. Request for Counsel

Plaintiff requests counsel on the grounds that he is indigent and unable to afford counsel, his imprisonment greatly limits his ability to litigate the case, the issues are complex, he has no physical access to the law library and is a novice to the rules of civil procedure, a trial will involve conflicting testimony, and council will enable plaintiff to

better present evidence and cross-examine witnesses. (D.I. 103) A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[2] See *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree
> to which factual investigation will be necessary and the ability
> of the plaintiff to pursue investigation; (4) the plaintiff's capacity
> to retain counsel on his own behalf; (5) the extent to which a
> case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; accord *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

To date, plaintiff's filings indicate that he possesses the ability to adequately pursue his claims. Upon consideration of the record, the court is not persuaded that representation by an attorney is warranted at this time. In addition, as discussed below, the evidence of record indicates that plaintiff cannot prevail on his claim. Therefore, the court will deny the request for counsel.

---

[2] See *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

### B. Motions to Compel

Plaintiff filed two motions to compel defendant to produce certain discovery. (D.I. 104, 105) Plaintiff has also filed a motion for the court to enter an emergency ruling on his pending motions to compel and request for counsel. (D.I. 107) The court has reviewed the pending motions and the discovery provided plaintiff. The court finds that defendant has adequately provided plaintiff discovery. Therefore, the court will deny the motions to compel. In addition, the court will deny as moot the motion for an emergency ruling.

### C. Motion for Injunctive Relief

On October 22, 2013, plaintiff filed a motion for injunctive relief seeking access to the law library. (D.I. 127) Plaintiff contends that the VCC administration is denying him access to the law library and retaliating against him. Plaintiff has filed grievances regarding the matter and states that the grievance chairperson refuses to process them.

Persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. This right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 85 (1987)). Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain

security within its walls and the rights of prisoners. *Howard v. Snyder,* 389 F.Supp.2d 589, 593 (D. Del. 2005).

All that is required is that plaintiff at least have access to a prison paralegal or paging system by which to obtain legal materials. *Abdul-Akbar v. Watson,* 4 F.3d 195, 203 (3d Cir. 1993) (holding that segregated prisoners who do not have access to an institution's main law library must have some means by which documents and materials can be identified by and furnished to them in a timely fashion). In addition, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. *Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Christopher v. Harbury,* 536 U.S. 403, 415 (2002)

Defendant opposes the motion on the grounds that plaintiff has been afforded law library access and provided documentation in support of his position. In addition, defendant contends that plaintiff failed to plead sufficient facts to establish a retaliation claim. Finally, defendant argues that plaintiff's grievance claim fails to state a claim.

Having considered the positions of the parties and the evidence of record, the court concludes that plaintiff has failed to make a showing that injunctive relief is appropriate. Therefore, the court will deny the motion for injunctive relief.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus.*

Plaintiff moves for partial summary judgment on the grounds that he has established a clear violation of the Eighth Amendment. Defendant moves for summary judgment on the grounds that: (1) the evidence of record could not lead a reasonable jury to conclude that she failed to protect defendant; and (2) plaintiff fails to establish a sufficient evidentiary basis on which a reasonable jury could rule in his favor.

### B. Discussion

#### 1. Failure to Protect

Plaintiff contends that defendant's conduct constituted cruel and unusual punishment in violation of the Eighth Amendment when she failed to comply with DOC regulations and failed to protect him from an attempted rape.

Prison officials have a duty to protect inmates from violence by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that: (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan*, 511 U.S. at 833-34; *see also Evans v. Cameron*, 443 F. App'x 704, 706 (3d Cir. 2011) (unpublished). "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v.*

*Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. See *Farmer*, 511 U.S. at 842. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. See *id.* at 844.

It is undisputed that prior to January 7, 2013, defendant was aware that plaintiff had concerns he would be assaulted because of his homosexuality, that she provided advice to him regarding his fears, and unsuccessfully sought to have him moved. It is also undisputed that when defendant returned to work on January 7, 2013, she discovered that, although plaintiff had been moved to a new cell, he continued to fear an assault by his new cellmate because of his sexual orientation. Hence, a reasonable jury could conclude that defendant was subjectively aware of a substantial risk of harm to plaintiff.

The record reflects that defendant did not ignore plaintiff's concern. Instead, plaintiff and his cellmate were removed from their cell and separately interviewed. Each inmate reported they feared the other. Defendant instructed both inmates to "stop bickering" or face time in isolation, they agreed to stop, and were returned to their cell. Defendant conducted a check thirty minutes later and both defendants were asleep in their beds. The record reflects that defendant had no prior complaints about plaintiff's cellmate. The record further reflects that defendant made a judgment call in returning plaintiff to his cell based upon her belief that plaintiff was using her for a transfer to SHU

11

in a single cell and her observation that plaintiff did not seem to be afraid. Finally, the record reflects that, although defendant knew of the risk, she took reasonable steps to prevent the harm from occurring. Based upon the foregoing, no reasonable jury could find that defendant violated plaintiff's rights under the Eighth Amendment to the United States Constitution.

Therefore, the court will deny plaintiff's motion for partial summary judgment and will grant defendant's motion for summary judgment.

### 2. Sex Discrimination

Plaintiff alleges that defendant "discriminated on him because of his sexual orientation." (D.I. 24, ¶ 3) More particularly, he alleges that if he were a straight man, defendant would have stepped in without hesitation. (*Id.* at ¶ 4) Plaintiff rests his claim on alleged statements made by defendant including, "you are a gay man, these men have not been with a woman in a long time. you should expect that, man-up and stop coming to jail." (*Id.* at ¶ 3)

To state a claim under the Equal Protection Clause, plaintiff must allege that he is a member of a protected class and he was treated differently from similarly situated inmates. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (noting that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"). If the litigant does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and

12

(3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

The Supreme Court has not recognized sexual orientation as a suspect class, and federal courts across the country have declined to identify homosexuals as a protected class. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113 n.9 (10th Cir. 2008) (collecting cases). Notably, plaintiff did not plead, and there is no evidence of record, that plaintiff was treated differently from similarly situated individuals and, even if he had, that there was no rational basis for any difference in treatment. Finally, no matter how offensive and derogatory the language that defendant allegedly used with respect to plaintiff's sexual orientation, that alone does not give rise to a constitutional claim. *See Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009) (unpublished) (verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983).

Plaintiff fails to plead a facially plausible equal protection claim. Therefore, the court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

### 3. Prison Rules/Regulation

The record reflects that defendant was reprimanded for failing to notify the area lieutenant verbally or in writing of the action she took with respect to the conflict between plaintiff and his cellmate. To the extent plaintiff alleges that defendant violated his constitutional rights by failing to following prison rules and regulations, the claim fails. The mere failure of prison officials to follow their own regulations alone is not a constitutional violation. *See Crist v. Phelps*, 810 F. Supp. 2d 703, 708 n.4 (D. Del. 2011) (citations omitted).

## V. CONCLUSION

For the above reasons, the court will deny plaintiff's motions (D.I. 103, 104, 105, 107, 118, 127) and will grant defendant's motion for summary judgment (D.I. 121). The court will dismiss the equal protection claim as frivolous.

An appropriate order will issue.